`IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

MOSES HOLLOWAY and
LISA HOLLOWAY                                                                    PLAINTIFFS


v.                                        No. 2:02CV00076 GH


CITY OF DES ARC, ARKANSAS; LEON MOON,
in his individual capacity and official capacity; DARRELL
TURNER, in his individual capacity and official capacity;
LARRY CURTIS, in his individual capacity and official capacity;
RICK PARSONS, in his individual capacity and official capacity;
GLEN PARSONS, in his individual capacity and official capacity;
DEWAYNE MAYHER, in his individual capacity and official capacity;
and CHARLES MACK                                                              DEFENDANTS


<u>**ORDER**</u>

Plaintiffs[1] filed an amended complaint on September 30, 2004, alleging claims pursuant to

42 U.S.C. §§1981, 1983, 1985(3), and 1986 for violations of their First, Second, Fourth, Fifth,

Eighth, and Fourteen Amendments rights.  Specifically, they allege a violation of §1983 by the

pursuit and execution of a search warrant by Moon, Turner, Curtis, Rick, and Glen without probable

cause on the plaintiffs' home on February 5, 2001; a violation of §1983 by the invitation and pursuit

of prosecution without probable cause by Moon, Curtis and Turner on February 12,15, and 17 of

2001; a violation of §1983 by the intentional deprivation of right to reasonable bail, due process and

equal protection of law by Moon and Curtis on February 12, 2001; a violation of §1983 by the

---

[1]For purposes of this order, an individual plaintiff will be identified by his or her first name as
will Rick Parsons and Glen Parsons; the remaining defendants will be referred to by their last names.

unlawful seizure, detention and search of Moses by Rick and Glen when he was stopped on June 21, 2001; a violation of §1983 by the deprivation of liberty, unreasonable search and seizure by Rick and Glen on August 1, 2001; a §1983 violation by Moon failing to supervise, train, and discipline his officers; a §1983 violation of municipal liability; and §§1981, 1983, and 1985(3) conspiracy to violate civil rights.  Plaintiffs seeks both compensatory and punitive damages.

On October 7, 2005, the Des Arc defendants – the City, Moon, Turner, Curtis, and Rick – filed a motion for summary judgment supported by brief,[2] exhibits[3] and a separate statement of undisputed facts.  They state that plaintiffs claim specifically that their rights were violated when their residence was searched – pursuant to a warrant – on or about February 5, 2001; they were arrested on or about February 17, 2001 as a result of the evidence found during the search; a traffic stop involving a car in which Moses was driving on or about June 21, 2001 was initiated, the car searched and Moses cited for a traffic violation; and Moses was arrested on or about August 1, 2001 for disorderly conduct and obstruction of justice.

They argue that they did not violate Moses' First Amendment rights in retaliation for his criticism of Mack when Moses was arrested on August 1, 2001 as his conduct in inserting himself into a traffic stop and using profane language with a wrecker driver who had been requested by a county law enforcement official to tow away a vehicle driven by a man arrested of driving while intoxicated does not rise to the level of protected speech as threats of violence do not fall within the realm of protected speech.  The Des Arc defendants continue that even if Moses could demonstrate

---

[2]As plaintiffs state in their October 18th response that certain claims are not at issue or will no longer be pursued, the arguments as to those claims – §1982, 5th Amendment, 8th Amendment, 13th Amendment, false imprisonment, and defamation – are moot and will not be discussed.

[3]In lieu of refiling the exhibits that were submitted on July 29, 2003 and August 29, 2003, these defendants avoid the duplication by referring to those previously submitted documents.

a violation of his First Amendment rights, the same decision to pursue charges would have occurred in the absence of the allegedly illicit motive as Moses attempted to hinder or impair the completion of the towing process order by the County deputy and so Rick had probable cause to arrest Moses.

On the alleged constitutional violations of interference with the plaintiffs' marital relationship, these defendants assert that there is absolutely no evidence that their conduct has "significantly discouraged" plaintiffs' marriage, made it "practically impossible," or acted with the "goal of poisoning" it and there is no evidence that these defendants directed their statements and conduct at plaintiffs' intimate relationship.

Turning to the Second Amendment claim, these defendants argue that plaintiffs have not alleged or otherwise demonstrated that their possession of firearms is reasonably related to a well-regulated militia.

The Des Arc defendants assert that the February 5, 2001 search of plaintiffs' residence was pursuant to a search warrant supported by affidavits presumed to be valid and issued by a municipal judge who was satisfied that there was probable cause and plaintiffs have offered no proof – beyond their bare assertions – that Turner made any statements which were deliberately false or in reckless disregard of the truth.  Likewise, they argue that the February 17, 2001 arrest of plaintiffs was made pursuant to a warrant which generally does not give rise to a cause of action against the arresting officer.

Regarding the June 21, 2001 traffic stop, they state that Rick initiated the traffic stop because Moses was driving a vehicle without a license plate which was a violation of state law, Rick then asked for a copy of the bill of sale to determine whether the deadline for registering the car had passed, and when Moses could not present a bill of sale, Rick issued him a citation for operating a

vehicle which was not properly registered.  Moreover, they assert that as Moses did not own the car

he was driving, he had no legitimate expectation of privacy in the vehicle and lacks standing to

assert  claims for a search of the car.

As for as the August 1, 2001 arrest, they state that Prairie County Deputy Alan Roberson had

initiated a traffic stop of a driver suspected of driving while intoxicated ("DWI"); Roberson asked

Rick to bring a portable breath test to the scene as Roberson did not have one; Roberson ordered that

the car be towed after determining that the driver should be arrested for DWI and asked Rick to stay

with the vehicle to ensure that it was towed away; plaintiffs arrived at the scene during the stop and

Moses asked if he could take home the car – which apparently belonged to them – which was being

towed; when Rick told them that he did not have anything to do with the tow, plaintiffs asked why

the driver had been arrested, approached Mack – the tow truck driver, and Moses called Mack a

"motherfucker" when Mack would not agree to release the car from the wrecker so Moses impaired

or hindered the governmental function of having the car towed and also engaged in disorderly

conduct.

The Des Arc defendants next address the plaintiffs' Fourteenth Amendment procedural due

process claims concerning the motor vehicle stops of June 21 and August 1 and the seizure of their

firearms on February 5.  They argue that Moses was afforded due process as citations were issued

on both dates upon probable cause, Moses was then afforded a trial with assistance of counsel and

the opportunity to confront all witnesses, and the charges against him were dismissed.  These

defendants continue that the claim based upon the confiscation of the firearms for evidence as the

plaintiffs have failed to allege – much less demonstrate – that they exhausted available state

remedies in seeking the return of their guns as Moses has admitted that he made no attempt to

retrieve his firearms from the Des Arc Police Department and Moon testified that plaintiffs could obtain the firearms at their convenience.

As to substantive due process, the Des Arc defendants argue that their conduct does not rise to the level of a substantive due process violation and plaintiffs have not offered any evidence to show that their conduct was individuously discriminatory or that plaintiffs have been treated any differently from other similarly-situated individuals who are suspected of possessing marijuana, driving vehicles without proper registration, or interfering with the investigation of a DWI stop.

Turning to the equal protection claims, these defendants again argue that plaintiffs have not offered any evidence to show that their conduct was individuously discriminatory or that plaintiffs have been treated any differently from other similarly-situated individuals who are suspected of possessing marijuana, driving vehicles without proper registration, or interfering with the investigation of a DWI stop.  They counter that the evidence confirms that plaintiffs were treated as anyone else would have been in similar circumstances as arrest warrants are typically sought when the charge is based on evidence found during a search conducted pursuant to a warrant, the Des Arc police officers do not consider race in issuing traffic or other citations, and plaintiffs simply cannot prove that couples involved in same-race marriages are treated more favorably when it comes to executing search warrants, initiating traffic stops, issuing citations or effecting arrests.

Moon contends that the claim for his alleged failure to train and supervise fails given the absence of any underlying violation of constitutional rights and that plaintiffs must prove that Moon had notice of prior misbehavior and that his failure to act upon such knowledge caused the injuries in question.  He asserts that he had no notice or knowledge of similar misconduct by Turner, Rick

and Curtis and that those officers were all certified law enforcement officers who had received hundreds of hours of training in law enforcement.

The Des Arc defendants maintain that there is nothing to demonstrate an agreement among the individual defendants to support the §1985 conspiracy claim and that the §1986 claim is dependent on a valid §1985 claim.

The individual Des Arc defendants argue that they are entitled to qualified immunity in their individual capacities. They assert that probable cause existed for the search of plaintiffs' residence, their subsequent arrest arising therefrom, the traffic stop involving Moses, and the arrest of Moses for disorderly conduct and obstruction of justice. They also argue that a reasonable police officer would not know that it would violate constitutional rights to search a residence pursuant to a search warrant, confiscating controlled substances from individuals not authorized to possess same, confiscating firearms from persons who have been convicted of a felony, arresting an individual pursuant to an arrest warrant, initiating a traffic stop of a car which does not have license plates, issuing a citation to a driver operating a vehicle with no license plates and no bill of sale establishing the date of the vehicle purchase, bringing a canine to the scene of a traffic stop where the officer smells marijuana, searching the vehicle after the canine indicates the presence of illicit drugs, and arresting a person for disorderly conduct and obstruction of governmental operations after said individual shows up at a traffic stop of a third party and uses profanity with the wrecker driver who has been ordered to tow away the vehicle driven by a person arrested for driving while intoxicated.

The Des Arc defendants continue that as plaintiffs have not demonstrated any constitutional violations, there can be no federal constitutional claim against the City of Des Arc; that even if the plaintiffs' constitutional rights were violated, the plaintiffs have failed to show that their injury was

the result of an official policy or widespread custom of the City; that the Des Arc Police Department's policies and procedures are promulgated and adopted by the City Council so that Moon, Turner, Rick and Curtis are not "final" policymakers; and the three alleged instances of unconstitutional conduct are insufficient to constitute a pattern of unconstitutional behavior or a policy involving arrests based on interracial marriages.

Glen and Mayher filed a motion to adopt the Des Arc motion on October 11th as well as their own motion for summary judgment filed on October 18th supported by brief, exhibits and a separate statement of undisputed facts.  They state that they are being sued arising out of the search conducted on the plaintiffs' house on February 2, 2001, that was instituted by various officers of the City of Des Arc Police Department based on search warrants obtain by that department and that the Des Arc police officers drove by the Prairie County Sheriff's Office on the way to the plaintiffs' residence and requested assistance from Glen and Mayher who were employed there.  Glen and Mayher assert that they had no prior knowledge of the arrest warrants and took a very limited role in the search so any acts or omissions committed by the Des Arc police department cannot be attributed to them for purposes of imputing individual liability and there is no showing of a custom or policy that these defendants were following for official capacity liability.  They contend that they provided security for the officers conducting the search; they assisted – at Curtis's request – in moving a heavy sofa for Curtis to search behind it and Mayher looked on the inside lining of the sofa; Mayher never entered the bedroom area and Glen looked under the bed and retrieved a box which contained the remains of Lisa's mother; they remained mostly in the living room area; they were not involved in the arrests of plaintiffs subsequent to the search and they were not involved in the seizure of the firearms or marijuana which were seized from the plaintiffs' home; they left the

residence at approximately 9:57 p.m. to assist a Prairie County Deputy in a traffic stop on Interstate 40; the Des Arc officers were still engaged in the search when they left; and neither of them ever returned to plaintiffs' residence since.

Glen and Mayher argue that they are entitled to qualified immunity as they had no role in obtaining the search warrant, they went along as "back-up" to provide security with the Des Arc officers who obtained and were executing the warrant; they had no individual role in the search of the individuals or residence and no individual role in the subsequent arrest, detention or the prosecutorial process; and they simply went along to the residence for a period slightly in excess of one hour during which time they essentially "stood there."  They continue that they complied with all aspects of Arkansas Criminal Procedure Rule 13.1 for execution of a search warrant; plaintiffs cannot submit facts which show that they violated any of plaintiffs' constitutional rights; that based on their objective knowledge of the situation at the time, they could not have known that any of their subsequent conduct considered unlawful as they were simply assisting another law enforcement agency in the service of the execution of a presumably valid search warrant.  These defendants also assert that generally when an individual defendants is found not to have committed a constitutional violation, then there is no official capacity liable either and that there is no showing that the Sheriff's office through these defendants engaged in or followed a custom or policy set up to deprive plaintiffs of their constitutional rights.

On October 18th, plaintiffs filed a response to the Des Arc defendants' motion as well as the motion to adopt along with a brief, and a controverting statement.  They first start with the argument regarding the August 1, 2001 incident that these defendants overlook that the traffic stop was over, the ticket was written, and the person accused of a crime was on his way to the county jail in a

separate police car operated by Robinson when Rick arrested Moses.  Rick directed Moses to talk to Roberson about retrieving plaintiffs' car and Roberson has admitted that Moses did not interfere with Roberson or his prisoner in any way, Roberson directed Moses to Mack who denied his request although Moses clearly had a right to take possession of the car under Ark. Code Ann. §27-50-1202(B)(5), and so his arrest is evidence that defendants conspired to violate his civil rights. Plaintiffs continue that Rick's explanation that he arrested Moses for using profanity is an admission that Rick violated Moses' First Amendment right as it was the word itself and not the context that caused the arrest and there is a question whether Moses committed the offense of disorderly conduct as it depends on the purpose Moses had in his mind.  Moses has testified that his purpose was to take his car home and pay Mack for any money that was owed for Mack's service which was justified under state law while the conduct of Rick and Mack in refusing to release the car was not and since they have not given a reason why they did not comply with state law, summary judgment in inappropriate.

Plaintiffs next turn to the February 5, 2001 search.  They argue the extensive Arkansas discussion of what is required of warrants authorizing nighttime searches and how defendants' argument of qualified immunity based on a facially valid warrant ignores Arkansas law that a reasonable police officer knows or should know not to request or execute a nighttime search warrant without setting out a clear factual basis for that extraordinary relief.  Plaintiffs contend that no objective facts demonstrating an exigent circumstance were stated in the affidavit for the search warrant as required by state law only that the officers' sworn statement that a confidential informant told Turner that the CI had observed a "large quantity of marijuana, drug paraphernalia, and other instruments of crime used for the sale and consumption of illegal contraband" in the plaintiffs' home

on February 5, 2001, and Turner's sworn conclusion that he felt like it was an emergency to get the evidence that night.

Regarding the February 17, 2001 arrest of Moses, plaintiffs assert that liability for executing the felony arrest warrant for Moses depends on whether a reasonably well-trained officer would have known the arrest was illegal despite the magistrate's authorization.  They state that the officers knew the felony warrant was based on the officers' representation that Moses was a convicted felon in possession of a firearm and was in constructive possession of less than one gram of marijuana, that Moses had no ACIC record of being convicted of a felony, and that he had never received any fine or imprisonment on any felony offense.  Plaintiffs continue that Moon supervised the drafting of the arrest affidavit and the execution of the warrant and is liable as a supervisor if a reasonably well-trained police officer would have known it was illegal to arrest Moses for being a felon in possession of a firearm without some proof he had ever been convicted of a felony.

They further state that they do not challenge the June 21, 1001 traffic stop of Moses by Rick, but instead the seizure of the vehicle's occupants and the search that occurred after the officer had finished conducting his lawful business as Rick admits Moses was detained with the vehicle long after the citation for failure to register a vehicle had been issued and that the car was afterwards thoroughly and unsuccessfully searched for contraband by a police dog nearly an hour later.

Turning to the August 1, 2001 arrest, plaintiffs maintain that it was done in spite of Moses' rights under Arkansas law as to "owner preference" as he did not commit any criminal or traffic offense in Rick's presence and Rick cannot reasonably claim that his subjective belief that public use of the "f-word" in itself is actionable criminal conduct as the standard is objective that such language is within the contours of the First Amendment protections.

-10-

Next, plaintiffs address their procedural due process claims that defendants have not offered any proof that they have returned Moses' firearms or any legal authority by which they might retain possession of the property after the underlying criminal charges have been dismissed and they have also failed to cite a state law that would justify their decision to charge him with a felony and seek an arrest warrant without some evidence he had previously been convicted of a felony offense.

Continuing to substantive due process, plaintiffs point to Lisa's uncontroverted testimony that defendants offered to let her go free in exchange for giving a statement to incriminate her African American husband which is prima facie evidence that he was treated different because of his race and defendants continued to press the felon-in-possession charge against Moses until a circuit judge dismissed the baseless charge.

Plaintiffs discuss their equal protection claims by again pointing to defendants offering to forego any charges against Lisa, white, to induce her to somehow implicate her husband, black, especially when Lisa has once been convicted of a felony and was found in close proximity to a firearm and a "personal use" amount of a controlled substance while Moses has no felony record and was not found physically near any contraband whatsoever.  They also assert that defendants have offered no explanation why they ignored state search law regarding the nighttime search.

While defendants claim there is no underlying violation of constitutional rights for which Moon may be held liable, plaintiffs argue that Moon supervised the other defendants when they applied for, obtained and executed a nighttime search in a manner that violated privacy rights and in violation of clearly established Arkansas law concerning exigent circumstances.  Plaintiffs further rely on his testimony concerning his conduct after the June 21, 2001 traffic stop that escalated into an effective seizure of Moses and a detailed search of the vehicle over which he had control.

Plaintiffs argue that the defendants' agreement to violate their civil rights for purposes of §1985 is demonstrated by the officers' joint execution of the nighttime search warrant; Moon's arrival with a police dog long after the June 21, 2001 traffic stop for insufficient evidence of registration was over and the testimony of the subsequent search although Moses was entitled to leave after the ticket was issued; Rick and Mack's refusal to allow Moses to retrieve his own vehicle and Moses' unlawful arrest as they were entitled to have a person of their choice take possession of the vehicle after the DWI suspect was removed.  They continue that qualified immunity is not applicable as the constitutional rights which were violated are clearly defined and a reasonable police officer would have known the conduct would not withstand scrutiny when the law is applied; defendants disregarded the state law requirements for nighttime search warrants which is a violation of the same rights protected by the Fourth Amendment; that while they do not complain about the June 21, 2001 traffic stop, they were injured by the detention, seizure and search that occurred after the purpose of the stop had been accomplished; none of the defendants are entitled to qualified immunity on the August 1, 2001 arrest of Moses for obstructing governmental operation because the DWI stop was over and the suspect was already en route to the county jail when Moses was arrested and it has been clearly the law since at least 1971 that the "f-word" is constitutionally protected speech; and defendants' conduct was unreasonable under clearly established law as to nighttime search and the detention and search of Moses after the purpose of the stop had already been accomplished.

Examining the City's arguments, plaintiffs state the collective violations discussed above will support a finding of municipal liability if it is the moving force behind the violations.  They point to the City not having a policy of provision requiring its officers to be familiar with and

observe the Arkansas Rules of Criminal Procedure; that there is no requirement that the officers receive any training or show any proficiency whatsoever in understanding the criminal procedure rules and that Moon has admitted he had final decisionmaking control over questions involving search and seizure and was a direct participant in the violations complained of; and Moses was subjected to no less than three separate Fourth Amendment violations within a five month period – two involving an unlawful arrest.  Plaintiffs finally argue that the City may be held financially liable for damages resulting from its own action or inaction in failing to hire a racially diverse police force and requiring its officers to know and conform to the requirements of the Arkansas Rules of Criminal Procedure.

However, plaintiffs did not file a response to the separate motion for summary judgment filed by Glen and Mayher on October 18th.

Mack filed a motion on October 24th to adopt the Des Arc defendants' summary judgment motion.

On October 26th, the Des Arc defendants filed a reply.  They start that a search does not violate any constitutional rights merely because it occurs at night and a search that complies with federal law will not be rendered unconstitutional merely because it may violate state law.  These defendants argue that the issuing judge found probable cause to authorize a nighttime search based on the reliable confidential informant's statement that a large quantity of drugs located at the residence would be sold, moved or destroyed before the next morning and that the search was valid even under Arkansas law.

Regarding the towing of the car, the Des Arc defendants contend that County Deputy Roberson had already ordered the vehicle to be towed – not Rick – and that Ark. Code Ann. §27-50-

1207(e) provides the remedies for aggrieved persons which plaintiffs have not exhausted and do not include directing profanity at a tow truck driver as he is preparing to tow the vehicle. These defendants also argue state law affords postdeprivation remedies for the confiscated pistol. They challenge the proof as to conspiracy as there is only speculation and conjecture and all the individuals were acting as employees when they allegedly conspired to deprive plaintiffs of their rights so that the City would have been conspiring with itself, but – in any case – there was no violation of plaintiffs' constitutional rights.

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986). The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986); Civil Procedure Rule 56. "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

The Court first addresses the February 5, 2001 search. Although plaintiffs originally argued that there was not probable cause for the issuance and execution of the search warrant,[4] their

---

[4]In the March 29, 2005 order finding that the identity of the confidential informant did not have to be disclosed, the Court stated "[a]mong the factors taken into consideration are the informant was not an active participant and only observed the alleged marijuana in the home of plaintiffs; it was the informant that contacted the authorities about what the informant had allegedly observed; the informant has provided information in a substantial number of cases that

response is now just focused on the argument that the warrant improperly authorized a nighttime search in violation of Arkansas law. As the Court stated in its March 31st order, "the Court cannot find, even if there were a violation by defendants of the Arkansas law regarding nighttime searches, that there is a violation of the Fourth Amendment under §1983 as a matter of law." Moreover, as it relates to Glen and Mayher, it is uncontroverted pursuant to Local Rule 56.1, the affidavits and deposition excerpts that they merely assisted in the execution of the search warrant and that their roles were very limited as to scope and duration.

On a related claim of whether plaintiffs were denied due process concerning the return on the firearms confiscated during the February 5, 2001 search, Moses stated in his May 15, 2003 deposition that he has not contacted the police station to ask for those weapons back. Thus, these defendants have correctly set out the applicable law that there is not a due process violation when plaintiffs have failed to avail themselves of state remedies for the return of the firearms.

The next event concerns the plaintiffs' arrest on February 17, 2001. Here, plaintiffs' argument in response simply centers on whether Moses had previously been convicted of a felony as alleged in the affidavit for the arrest warrant.

The recent case of Hall v. Phillips, 2006 WL 2221494, *12 (W.D. Ark. 2006), summarizes:

A facially valid arrest warrant insulates officers from a claim of false arrest. Mendenhall v. Riser, 213 F.3d 226, 231 (5th Cir. 2000). See also Fair v. Fulbright, 844 F.2d 567, 569 (8th Cir. 1988) ("[A]n arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer.").

---

resulted in either felony convictions or that were ultimately nolle prossed; the informant has never provided information while under threat of prosecution, was not facing any pending charges at the time and has never received payment or anything of value in return for assistance or information; the length and ongoing nature of the relationship between the informant and these defendants; and the informant's ties with the community."

Although Moses contends that he was not a convicted felon, he admits in his May 15, 2003 deposition that he pleaded guilty to two different crimes that are classified as felonies while still maintaining that they were not convictions. Also, his guilty plea statement is attached as an exhibit to his deposition. In addition, Moon testified in his May 19, 2003 deposition that when he saw the Curtis' affidavit for Moses' arrest, he went to the Pulaski County Courthouse and got a copy of the records that both plaintiffs were convicted felons.

The Eighth Circuit Court of Appeals provided this recent summary of qualified immunity in <u>Kenyon v. Edwards</u>, _____F.3d _____, 2006 WL 2561241, *2 (8th Cir. 2006), as follows:

> <u>Saucier</u> provides the marching orders for courts considering qualified immunity claims. Under <u>Saucier</u>, courts presented with a motion for summary judgment on the basis of qualified immunity undertake a two-step inquiry. The threshold question asks "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If, on the facts as alleged, no constitutional violation could be shown were the allegations established, the inquiry ends, and the defendant is entitled to qualified immunity. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." <u>Id</u>. The second question must be asked in a "particularized" sense: " '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." ' <u>Id</u>. at 202 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). That is, the essential question at step two is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id</u>.

In addition, the appellate court explained in <u>Wilson v. Northcutt</u>, 441 F.3d 586, 590 (8th Cir. 2006):

> Qualified immunity protects government officials from the costs of trial and the burdens of broad discovery unless their discretionary acts violated clearly established statutory or constitutional rights. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A defendant's claim of qualified immunity is determined by an objective standard under <u>Harlow</u>. This prompts the difficult question of whether an official is entitled to qualified immunity if improper motive-such as purposeful race discrimination or retaliation-is an element of the plaintiff's federal claim. In <u>Crawford-El v. Britton</u>, 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), the Court declined to place a higher burden of proof on plaintiffs in these situations, observing that "the improper intent element

of various causes of action should not ordinarily preclude summary disposition of insubstantial claims."  Justice Stevens's majority opinion then gave substance to this observation by instructing:

> [I]f the defendant-official has made a properly supported motion [for summary judgment on the ground of qualified immunity], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.

523 U.S. at 600, 118 S.Ct. 1584 (footnote omitted).

Thus, based on the record, the Court cannot find that the Des Arc defendants' conduct in obtaining the arrest warrant violated a constitutional right.  Moreover, even if it could be said that there was such a violation, it would not be clear that a reasonable officer would understand that his conduct in relying on such information in obtaining the warrant or executing the warrant would be unlawful.

The Court next turns to plaintiffs' claims of substantive due process and equal protection. In Skokos v. Rhoades, 440 F.3d 957, 962 (8th Cir. 2006), the Eighth Circuit discussed the standard as set out below:

> To make out a substantive due-process violation, the plaintiffs must show that the defendants' actions deprived them of their liberty interests in running legitimate businesses. Not all conduct by a state actor that injures a private party, of course, can amount to a due-process violation.  See County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  For the conduct to amount to a constitutional deprivation, the state actor's conduct must be egregious, Bonebrake v. Norris, 417 F.3d 938, 942 (8th Cir. 2005), or, in other words, " 'arbitrary, or conscience shocking, in a constitutional sense.' " Lewis, 523 U.S. at 847, 118 S.Ct. 1708 (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).  But what conduct is egregious? As Lewis states, a court must engage in "an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."  Lewis, 523 U.S. at 850, 118 S.Ct. 1708. The decision is based, in part, on whether the officials were forced to make an instantaneous decision, or whether they instead had time to deliberate and choose their course of action. See id. at 852-54, 118 S.Ct. 1708.

Here, plaintiffs point to the alleged substantive due process and equal protection violations as being Lisa's testimony that the Des Arc officers tried to get her to implicate her husband and the felon in possession charge being pursued until it was dismissed by the circuit judge.  The pursuit on the felon in possession charge argument is without merit as explained in the discussion of the February 17th arrest.  The Court must also reject plaintiffs' argument that the officers' action in trying to get Lisa, who is white, to implicate her husband, who is black, violates equal protection is based on speculation and conjecture that their *attempt* to have her incriminate Moses was due to race when it could have been based on other factors such as gender, age, being a mother, likelihood that she might be easier to sway, or information from the confidential informant as to culpability.  Moreover, plaintiffs have presented no proof that these officers have not tried to get one spouse to incriminate another spouse when the couple was of the same race.

The June 21, 2001 traffic stop is the next event at issue.  Plaintiffs are not contesting the validity of the original stop or the issuance of the citation, but instead challenge the detention of Moses while Moon and his dog Moose were called in to perform a sniff and the subsequent search of the vehicle.  The Court finds that there are disputed questions of fact as to whether there was probable cause based on the different depositions accounts of Moses, Rick and Moon as to whether there was an odor of marijuana detected that prompted the call to Moon.  Under these circumstances, the Court cannot find that there was not a constitutional violation and so Rick and Moon are not entitled to qualified immunity.  However, plaintiffs have not countered that Glen did not pull Moses over, did not request the paperwork, did not conduct the search, and did not ticket plaintiff, but merely pulled up during the stop and kept Moses away from the car while it was being search by the Des Arc police.  Thus, there was no constitutional violation committed by Glen.

The final incident involves the August 1, 2001 arrest of Moses.  As Moses relies on Ark.

Code Ann. § 27-50-1202, the pertinent parts are set out below:

For the purposes of this subchapter, unless the context otherwise requires:

****

(3) "Nonconsent" means towing, storage, or recovery of any unattended or abandoned vehicle as defined in this subchapter or any disabled or inoperative vehicle for which the owner preference is waived by the owner or person in charge thereof;

(4) "Owner" of an unattended or abandoned vehicle shall in the absence of conclusive evidence to the contrary be deemed to be the person in whose name the vehicle is registered with the Office of Motor Vehicle of the Revenue Division of the Department of Finance and Administration or in whose name the vehicle is registered in any other state;

(5) "Owner preference" means the right of the owner, his or her agent, or any competent occupant of any disabled or inoperative vehicle to request some responsible and reasonable person, gratuitous bailee, or bailee for hire of his or her choosing to take charge and care of the vehicle;

****

(7) "Public way" means any road, highway, or street over which the public may travel, including the traveled surface and any berm or shoulder thereof. Nothing herein shall be applicable to vehicles left unattended or abandoned on private property and subject to § 27-50-1101 et seq.;

(8) "Removal" means that an officer of any law enforcement agency may request a towing and storage firm which is licensed by the Arkansas Towing and Recovery Board to engage in nonconsent towing of vehicles to:

> (A) Remove and store any unattended or abandoned vehicle pursuant to this subchapter;

> ****

> (C) Remove and store any vehicle in which the operator was apprehended by law enforcement officers;

(9) "Tow vehicle" means any motor vehicle or related equipment subject to registration in the State of Arkansas which is used to tow, recover, upright, transport, or otherwise facilitate the movement of vehicles on public highways;

(10) "Unattended" means any vehicle left on public property without the consent of an authority in charge of the property or on or near a public way without some person, gratuitous bailee, or bailee for hire in possession of the vehicle; and

> (A) Which vehicle is located within a distance of three feet (3') of the traveled surface of the public way;
>
> ****
>
> (E) Which vehicle was operated to a place of apprehension by law enforcement under police power and the operator thereof removed from the vehicle and taken into police custody;
>
> (F) Which vehicle is located upon any public right of way and due to geographic location, traffic density, or climatic conditions, creates a substantial hazard to the motoring public, as determined by a law enforcement officer; or
>
> ****

In addition, Ark. Op. Atty. Gen. No. 96-010, 1996 WL 101387, *2, provides in relevant part:

> It appears that the vehicle of a person who is apprehended by police and arrested for DWI would be an "unattended" vehicle under the definition set out at A.C.A. § 27-50-1202(1)(D), which includes any "vehicle left on public property without the consent of an authority in charge of such property or on or near a public way without some person, gratuitous bailee, or bailee for hire in possession of such vehicle, and ... [w]hich vehicle was operated to a place of apprehension by law enforcement under police power, the operator thereof removed from the vehicle and taken into police custody." So under ordinary circumstances, the "owner preference" provision set out above would not apply to a persons arrested for DWI. Such "owner preference" appears to only be applicable in the case of disabled or inoperative vehicles. If the vehicle of the motorist arrested for DWI is not disabled or inoperative, he is not entitled to "owner's preference" in selecting a towing firm. The statutes provide with regard to "unattended vehicles" that the law enforcement officers shall comply with policies prescribed by his or her agency. There is no state law requirement of owner preference as to such vehicles. [Footnote omitted.]

Moses' sole issue with Mack is that Mack did not comply with Ark. Code Ann. § 27-50-1202 in releasing the car to him when Moses sought to pay the fee there and avoid having the car towed.

However, even if there were a violation of a state law, that does not constitute a basis for a claim

under §1983.  Plaintiffs do not argue that Mack took any other actions or otherwise was a participant

in the subsequent arrest made by Rick.

Turning to the actions of Rick on August 1, 2001, the Court finds the recent case of <u>Sorgen</u>

<u>v. City and County of San Francisco</u>, 2006 WL 2583683, *5 (N.D. Cal. 2006), provides the

following summary:

> The public does have a First Amendment right to criticize the police, and even yell
> profanities at the police and make obscene gestures, without getting arrested solely for such
> speech.  See <u>e.g. City of Houston v. Hill</u>, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398
> (1987); <u>Duran v. City of Douglas</u>, 904 F.2d 1372, 1377 (9th Cir. 1989).  As such "verbal
> protests" [can] not support an arrest under § 148."  <u>Mackinney v. Nielsen</u>, 69 F.3d 1002,
> 1007 (9th Cir. 1995) (emphasis added).  This line of cases, however, does not allow a person
> to avoid arrest or conviction for the conduct of refusing to comply with a police order to
> move back during an arrest .  See, <u>e.g.</u>, <u>U.S. v. Poocha</u>, 259 F.3d 1077, 1082-83 (9th Cir.
> 2001) (while bystander could not be convicted for yelling obscenities at police he could be
> convicted for defying order to leave scene of arrest).

Here, there is once again disputed facts to be resolved.  The testimony of the plaintiffs' in

their depositions differ from the deposition testimony of Rick as to whether Moses' language

including the profanity and his actions were threatening and whether there was indeed interference

with Mack carrying out the directions of Roberson regarding the towing of the car.  Thus, there is

a question as to whether there was a basis for the arrest of Moses which would determine whether

there was a constitutional violation.  Rick is not entitled to qualified immunity.

The Court agrees with the Des Arc defendants' argument and legal authorities that plaintiffs

have not shown that any injury was the result of an official policy or widespread custom of the City;

that Moon, Turner, Rick and Curtis are not "final" policymakers; and the three alleged instances of

unconstitutional conduct are insufficient to constitute a pattern of unconstitutional behavior or a

policy involving searches or arrests based on interracial marriages or without probable cause.

Therefore, summary judgment is warranted on the claims against the Des Arc defendants in their

official capacities and the City itself.  Likewise, plaintiffs have failed to demonstrate liability as to Moon for failure to train or supervise his officers.  Proof by plaintiffs is also lacking to establish a conspiracy to violate the constitutional rights of plaintiffs.

Accordingly, the October 7th motion (#132) motion for summary judgment of separate defendants City of Des Arc, Moon, Turner, Rick Parsons, and Curtis is granted in part and denied in part.  The October 18th motion (#139) for summary judgment filed by Glen Parsons and Mayher is granted thereby mooting their October 11th motion (#135) to adopt the summary judgment motion filed by the Des Arc defendants.  The October 24th motion (#142) filed by Mack to adopt the summary judgment motion filed by the Des Arc defendants is granted.  In light of these rulings on summary judgment, the City of Des Arc, Turner, Curtis, Glen Parsons, Mayher, and Mack are dismissed as defendants.  Moon and Rick Parsons remain as defendants in their individual capacities involving the June 21, 2001 and August 1, 2001 incidents.

IT IS SO ORDERED this 29th day of September, 2006.


_George Howard Jr._
UNITED STATES DISTRICT JUDGE